# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 25-00342-001 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| JAMISON KEONTAI KING | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss Indictment (Record Document 10) filed by Defendant Jamison Keontai King ("King") on December 18, 2025. King moves to dismiss the Indictment charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The Government filed an Opposition (Record Document 20), and King replied (Record Document 22). For the reasons explained below, the Motion is **DENIED**.

## FACTUAL BACKGROUND

On December 3, 2025, a federal grand jury returned a one-count indictment charging King with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) based off his arrest on October 23, 2024. See Record Document 20 at 2. Prior to the charged conduct, King had sustained multiple felony convictions punishable by imprisonment for a term exceeding one year. See id. at 1–3. In November 2017, King pled guilty in the 344th Judicial District Court for Chambers County, Texas, to unlawful possession of a controlled substance, methamphetamine, in an amount of one gram or more but less than four grams and was sentenced to six years' imprisonment. See id. at 2. In November 2017, King also pled guilty in the same court to unlawful possession of a controlled substance, cocaine, in an amount of one gram or more but less than four grams

and was sentenced to six years' imprisonment. See id. at 3. In December 2019, King pled guilty to unlawful possession of a firearm by a felon and was sentenced to three years' imprisonment. See id. King also had a prior misdemeanor conviction for domestic violence related conduct. See id.

King now moves to dismiss the indictment, arguing that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him. See Record Document 10 at 1. Relying on New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022), and United States v. Diaz, 116 F.4th 458 (5th Cir. 2024), King contends that because the Second Amendment presumptively protects his conduct, the burden shifts to the Government to demonstrate that disarming him is consistent with the Nation's historical tradition of firearm regulation. See Record Document 10-1 at 3–4. King asserts that the Government has failed to carry that burden as applied to him and that the indictment must be dismissed. See id.

In opposition, the Government contends that King's felony convictions, particularly his drug-related convictions and prior conviction for unlawful possession of a firearm by a felon, establish a sufficient nexus to public safety to defeat his as-applied challenge under controlling precedent. See Record Document 20 at 8–12. Alternatively, the Government argues that his misdemeanor domestic violence related conviction provides an independent basis for restricting his Second Amendment rights.

## LAW AND ANALYSIS

**I.     Applicable Standards**

Federal Rule of Criminal Procedure 12(b)(1) states that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the permits." "Among other defenses, objections or requests available under

Federal Rule of Criminal Procedure 12(b), a party may move to dismiss an indictment based on 'a defect in the indictment,' including 'failure to state an offense.'" United States v. Wilson, 2024 WL 4436637, at *2 (E.D. La. Oct. 6, 2024) (citing Fed. R. Crim. P. 12(b)(3)(B)(v)). A court can resolve a motion to dismiss an indictment before trial when the motion presents a question of law. See United States v. Fontenot, 665 F.3d 640, 644 (5th Cir. 2011).

In Bruen, the Supreme Court provided a two-step framework for Second Amendment constitutional challenges. See 597 U.S. at 24. First, "Bruen requires the Court to decide 'if the Second Amendment's plain text covers' the conduct at issue." Wilson, 2024 WL 4436637, at *4 (citing Bruen, 597 U.S. at 24). Second, "the burden [...] shifts to the government to demonstrate that regulating [Defendant's] possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation.'" Id. (citing Bruen, 597 U.S. at 24). "To satisfy this burden, the government must 'identify a well-established and representative historical analogue, not a historical twin.'" Diaz, 116 F.4th at 467 (citing Bruen, 597 U.S. at 30). To determine whether regulations are relevantly similar under the Second Amendment, the Court must consider "how and why the regulations burden a law-abiding citizen's right to armed self-defense." Bruen, 597 U.S. at 29.

## II.     Analysis

In considering the first step of the Bruen analysis, the Court must consider whether the Second Amendment's plain text covers the instant conduct. See 597 U.S. at 24. The Fifth Circuit in Diaz made clear that the Second Amendment's plain text covers felons as

among "the people" covered by the Second Amendment. See 116 F.4th at 169. Thus, the Court will proceed to the second step under Bruen.

In analyzing the second prong, the Court first must determine whether there are historical analogues that "impose a comparable burden on the right of armed self-defense" during the timeframe of the Second Amendment's ratification. Bruen, 597 U.S. at 27. In upholding a § 922(g)(1) conviction predicated on a felony theft conviction, the Diaz Court relied on three categories of historical analogues:

> (i) historical laws that authorized capital punishment and estate forfeiture as consequences of felonies, (ii) two proposals from state constitutional conventions that excluded those deemed dangerous from the right to bear arms, and (iii) the colonial-era "going armed" laws first discussed in Rahimi that "prohibited going armed offensively and authorized forfeiture of weapons as punishment."

U.S. v. Ezell, 2024 WL 4729314, at *2 (W.D. La. Nov. 8, 2024) (citing Diaz, 116 F.4th at 467–68, 470) (discussing U.S. v. Rahimi, 602 U.S. 680 (2024)) (internal citations omitted). In all three categories discussed in Diaz, the consequences of committing certain crimes encompassed forfeiture of the right to bear arms.

The historical analogues discussed above are rooted in the common purpose of disarming individuals viewed as violent or as a threat to public safety. These analogues represent the longstanding tradition of firearm regulation that allows the "Government to disarm individuals who present a credible threat to the physical safety of others." Rahimi, 602 U.S. at 700.

Here, King's predicate felony convictions establish the requisite nexus to public safety. King's multiple felony drug convictions and prior conviction for unlawful possession of a firearm by a felon place him within the category of individuals historically subject to firearm dispossession. As in Diaz, the enforcement of § 922(g)(1) against King serves a

purpose "relevantly similar" to that of the historical analogues—namely, to deter violence and lawlessness. Diaz, 116 F.4th at 469.

The Fifth Circuit has repeatedly upheld the constitutionality of § 922(g)(1) as applied to defendants with felony drug convictions, recognizing the well-established connection between drug offenses and threats to public safety. See U.S. v. Kimble, 142 F.4th 308, 317 (5th Cir. 2025), cert. denied, 2026 WL 135675 (U.S. Jan. 20, 2026); see also U.S. v. Hensley, 2026 WL 94959 (5th Cir. Jan. 13, 2026). Under this precedent, King's as-applied challenge fails.

## CONCLUSION

Based on the reasons explained above, King's Motion to Dismiss Indictment (Record Document 10) is **DENIED**.

An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 29th day of January, 2026.

```
        JUDGE S. MAURICE HICKS, JR.
        UNITED STATES DISTRICT COURT
```